[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 50 year old plaintiff and the 46 year old defendant intermarried on February 20, 1965. The plaintiff now seeks to dissolve the marriage on the ground of irretrievable breakdown. The defendant has filed a cross-complaint seeking the same relief on the same ground. The defendant is in good health. Both are high school graduates. With except for one brief period of six (6) months, the plaintiff has worked twenty-eight years for an industrial laundry concern with corporate headquarters located in Syracuse, New York, where he started as a computer clerk. He is now Executive Vice-President with an annual salary of $100,000. The company is a privately owned family corporation whose founder is now 83 years old, having recently named a son as President. The plaintiff testified that he is concerned about his relationship with the President.
The defendant had a hysterectomy operation and is still being followed for any pre-cancerous development. The defendant testified that she experiences periods of depression. She was a long distance telephone operator at the time of the marriage and she continued to work until one month before the birth of the parties' first child, a daughter born on December 2, 1965. A second child, a son, was born in 1967. CT Page 9057
The parties' respective functions as husband and wife were almost classic. The plaintiff worked 60 to 70 hours weekly, believing he had to work harder than others due to his lack of a college degree. He travelled extensively, was reassigned, first to Pennsylvania, and later to Waterbury, Connecticut. The defendant has been a homemaker and the primary caretaker of the children. The plaintiff's salary was deposited to the parties' checking account from which the defendant paid the household bills in managing the family budget.
The plaintiff's work habits included happy hour entertaining, drinking alcoholic beverages, sometimes to excess, all of which placed strains on the marriage which led to its initial breakdown in 1980. The plaintiff also was unfaithful with other women on three or four occasions and the defendant also described several episodes of physical abuse.
The parties separated in 1980. The defendant began a divorce action in 1982 which remained pending until 1985 when the parties agreed to reconcile. During the parties' period of separation, both parties had seen other romantic partners.
The parties were living in the York, Pennsylvania area when the reconciliation was effected. They agreed to sell their house and the defendant moved to Southbury, Connecticut into a house acquired with the sale proceeds of the Pennsylvania home.
The defendant concluded, shortly after plaintiff's father's death in 1988, that the reconciliation failed and that the marriage had broken down irretrievably. The plaintiff remained in Syracuse most of the time and the defendant stopped travelling to Syracuse to visit with the plaintiff.
The court concludes that, despite the attempted reconciliation, that the parties' marriage had broken down beyond repair by 1980. Both parties testified that the marriage had been mostly "rocky" throughout.
The defendant has made no effort to reenter the labor market since the time the younger child reached his majority five years ago. The defendant has sought no counselling in over a year. The defendant protests that she is "pulling herself together" while visiting for extended periods of time with her family and friends at Provincetown, Massachusetts. The court concludes that there is no reason for the defendant to evade or avoid the labor market.
Having considered the evidence in light of the statutory criteria, the court enters the following judgment. CT Page 9058
1. A decree is entered on the complaint dissolving the parties' marriage on the ground of irretrievable breakdown. The cross-complaint is dismissed as now moot.
2. The defendant is awarded the plaintiff's interest in the real estate known as 36 Bridle Path Road, Southbury, Connecticut. The defendant shall be solely responsible for the remaining mortgage balance, and shall be solely responsible for any tax bills due in the future.
3. The plaintiff shall pay to the defendant the sum of $500 weekly as periodic alimony for the 104 weeks immediately following the dissolution. Whereafter the plaintiff shall pay periodic alimony of $300 weekly until the remarriage of the defendant or the death of either party. This order shall be secured by a wage withholding which the parties have agreed may be contingent, form JD-FM-71 having been completed and filed by the parties.
4. The plaintiff shall maintain life insurance on his life, naming the defendant beneficiary, in the face amount of $75,000 for an initial period of five years, in the face amount of $50,000 for the next five year period and in the face amount of $25,000 for a final period of five additional years. The plaintiff may cancel this insurance if his obligation to pay periodic alimony terminates.
5. The plaintiff shall pay, as additional periodic alimony, the premiums payable to continue coverage of the defendant on the plaintiff's medical insurance benefits for as long as defendant's COBRA rights permit her to remain thereon as an ex-spouse.
6. The defendant is awarded 25% of the plaintiff's 401K pension plan. The attorney for the plaintiff is directed to prepare the order.
7. The parties shall pay the debts each has listed on their financial affidavits.
8. The parties shall divide any remaining tangible personal property. If a dispute arises, it shall be referred back to court for an articulation.
9. The plaintiff is ordered to pay to the defendant the sum of $6,000 as an allowance to defend to defray her legal expenses, payable on or before November 15, 1991.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J. CT Page 9059